IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RICHARD C. GOINS,
     Petitioner,

vs.                                 Case No. 4:07cv14/RH/EMT

WALTER A. McNEIL,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 and supporting memorandum (Docs. 14, 25). Respondent filed an answer to the second amended petition and relevant portions of the state court record (Docs. 30, 62). Petitioner filed a reply (Doc. 65).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 30, Exhibits). Petitioner was charged in the Circuit Court for Leon County, Florida, with one count of armed robbery with a deadly weapon (Doc. 30, Ex. A). Following a jury trial, Petitioner was convicted of the lesser included offense of aggravated battery (Doc. 30, Exs. B, C). On September 3, 2002, Petitioner was sentenced as a prison releasee

reoffender, pursuant to Florida Statutes § 775.082(2)(b), to a term of fifteen (15) years of imprisonment (Doc. 30, Exs. D, E).

Petitioner appealed the judgment to the Florida First District Court of Appeals ("First DCA") (*see* Doc. 30, Ex. F). On January 20, 2004, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing February 5, 2004 (Doc. 30, Exs. H, I). Goins v. State, 865 So. 2d 484 (Fla. 1st DCA 2004) (Table). Petitioner did not seek further review by the Florida Supreme Court or the United States Supreme Court.

On October 14, 2004, Petitioner filed a petition for writ of habeas corpus in the Circuit Court for Dixie County, Florida, the county where he was incarcerated (Doc. 30, Ex. J). The court denied the petition in an order rendered on February 9, 2005 (*id.*, Ex. K). Petitioner filed a motion for rehearing, which was denied (*id.*, Exs. L, M). Petitioner appealed the denial of his habeas petition to the First DCA (*id.*, Ex. N). On November 8, 2006, the First DCA affirmed the lower court's decision per curiam without written opinion (*id.*, Ex. Q). Goins v. State, 944 So. 2d 989 (Fla. 1st DCA 2006) (Table). Petitioner filed a motion for rehearing, which was denied on December 19, 2006 (*id.*, Exs. R, S).

Petitioner filed the instant habeas action on May 1, 2007 (Doc. 1 at 1). The District Judge previously determined that the petition is timely (Doc. 45).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

>      (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S.

---

[1] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.     EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A) the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i) there is an absence of available State corrective process; or
          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The <u>Baldwin</u> Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a

---

[3]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the

---

[4] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    <u>Ground One: "Petitioner's Constitutional Rights of 4, 5, 14 Were Violated."</u>

<u>Ground Two: "Petitioner's Constitutional Rights of 6, 5, 14 Were Violated."</u>

<u>Ground Three: "Petitioner's Constitutional Rights of 4, 5, 6, and 14 Were Violated."</u>

<u>Ground Four: "Petitioner's Constitutional Rights of 4, 5, 6, and 14 Were Violated."</u>

<u>Ground Five: "Petitioner's Constitutional Rights of 6 and 14 Were Violated."</u>

In Ground One, Petitioner contends his Fourth Amendment rights were violated by the trial court's failure to hold a first appearance or arraignment and failure to make a probable cause determination to support his pretrial detention within twenty-four (24) hours of his arrest (Doc. 14 at 4; Doc. 25 at 6).[6] Petitioner asserts the trial court's docket report was falsified to show that he had a first appearance hearing on May 31, 2001 (Doc. 14 at 6). He states he never waived his right to a first appearance or arraignment, nor did he authorize counsel to do so (*id.*). Petitioner further asserts that his arrest was warrantless, and all of these issues were brought to the court's attention through a motion to dismiss (*id.*). Petitioner states the trial court held an <u>Arthur</u> hearing,[7] and then denied the motion to dismiss on July 15, 2002, without making any factual findings or conclusions

---

[6] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[7] <u>State v. Arthur</u>, 390 So. 2d 717, 719–20 (Fla. 1980) (holding that, before trial court may deny release on bail pending trial on capital felony, life felony, or offense punishable by life imprisonment, State must show that "proof of guilt is evident or the presumption great") (citing Art. I, § 14, Fla. Const.).

(*id.*). Petitioner contends his pretrial detention without bond, an arraignment, or a judicial determination of probable cause for his detention rendered his pretrial detention, from May 30, 2001 to August 27, 2002, unconstitutional (*id.*).

In Ground Two, Petitioner contends that his constitutional right to a speedy trial was violated when the trial court erroneously proceeded to trial (Doc. 14 at 4; Doc. 25 at 6). He states his speedy trial time frame began to run on May 30, 2001, the date of his arrest (Doc. 14 at 4). He states that he never waived his right to a speedy trial, and none of the continuances that were granted within the 180-day time frame could be "held against [him]" (*id.* at 7). Petitioner states that when he was finally brought before a judge, on February 4, 2002, for the <u>Arthur</u> hearing, his speedy trial period had already expired (*id.*). At that hearing, the State was granted a continuance, and Petitioner's appointed counsel was removed from the case due to ineffective assistance (*id.*). Petitioner states he filed a motion to dismiss the case, but the trial court denied the motion on July 15, 2002 (*id.* at 7–8; Doc. 25 at 17). He states he raised this issue in his state habeas petition, but it was denied on procedural grounds (Doc. 14 at 4, 8).

In Ground Three, Petitioner contends that the State's filing the information without a first appearance or judicial determination of probable cause to support his pretrial detention rendered the information void (Doc. 14 at 5, 9; Doc. 25 at 6–7). He additionally contends the absence of a valid charging document, the absence of a first appearance and probable cause determination within twenty-four hours, and the expiration of the speedy trial deadline deprived the trial court of jurisdiction to convict and sentence him (Doc. 14 at 5, 8–9). He states he raised this issue in his motion to dismiss, but the trial court denied the motion (*id.* at 9; Doc. 25 at 17). Petitioner states the trial court's denial of the motion to dismiss twice placed him in jeopardy for the same "fraudulently filed" information (Doc. 14 at 9). Petitioner states he raised this issue in his state habeas petition, but it was denied on procedural grounds (*id.* at 5, 9).

In Ground Four, Petitioner contends the pretrial, trial, and post-trial proceedings were "fruits of a poisonous tree" of illegal acts, which renders his conviction void and his detention unlawful (Doc. 14 at 5, 10; Doc. 25 at 7–8). Petitioner contends he raised this ground in his state habeas petition but was denied relief on procedural grounds (Doc. 14 at 5, 10–11).

In Ground Five, Petitioner contends his appellate counsel, Steven Seliger, was ineffective for failing to raise Grounds One through Three on direct appeal of his conviction (Doc. 14 at 12). Petitioner states counsel refused to raise these issues because, according to correspondence from counsel to Petitioner on June 20 and June 27, 2003, the issues were outside the scope of the appellate record (*id.*). Petitioner states his counsel failed to "investigate and perfect" the appellate record, and instead filed a "weak and frivolous brief containing one ground" (*id.*). Petitioner asserts Grounds One through Three were preserved in the trial court, and if counsel had raised these issue on appeal, he would have prevailed (*id.*).

Respondent contends Petitioner failed to properly exhaust Grounds One through Four because he did not raise these claims either on direct appeal or by a properly-filed postconviction motion (Doc. 62 at 17). Respondent states Petitioner's only attempt to raise the claims was by way of a petition for writ of habeas corpus filed in the court where he was incarcerated (Dixie County), not the court where he was convicted and sentenced (Leon County) (*id.* at 18). Respondent contends the Dixie County Circuit Court correctly denied the state habeas petition on the grounds that a habeas petition may not be used to collaterally attack a conviction, rather, a postconviction motion under Rule 3.850 of the Florida Rules of Criminal Procedure is the appropriate vehicle (*id.*). Furthermore, the state court properly determined that a collateral attack must be made in the county where the judgment of conviction and sentence was entered, not the county where the petitioner is incarcerated (*id.*). Respondent further contends Petitioner has failed to show cause for his failure to properly present his claims to the state court, nor has he established prejudice (*id.* at 18). Respondent highlights the fact that the Dixie County Circuit Court expressly advised Petitioner that the proper place to collaterally challenge his conviction was in the court where the judgment was entered, but Petitioner made no to attempt to file a postconviction motion in the proper court, that is, Leon County Circuit Court (*id.* at 18–19). Moreover, as the Dixie County Circuit Court recognized, the claims raised in Petitioner's state habeas petition were procedurally barred because they should have been raised on direct appeal, not by way of a collateral challenge (*id.* at 19). Respondent contends that because the state court rejected Petitioner's claims on an independent and adequate state procedural ground, they are barred from federal review (*id.*).

As to Ground Five, Respondent contends Petitioner failed to exhaust his state court remedies because he failed to properly raise a claim of ineffective assistance of appellate counsel in state court (Doc. 62 at 24).  Respondent states that Rule 9.141(c) of the Florida Rules of Appellate Procedure authorizes petitions alleging ineffective assistance of appellate counsel to be filed in the appellate court to which the appeal was taken (*id.*).  The rule provides that such a petition must not be filed more than two years after the conviction becomes final unless the petitioner alleges under oath with a specific factual basis that the petitioner was affirmatively misled by counsel about the results of the appeal (*id.*).  *See* Fla. R. App. P. 9.141(c)(4)(B).  Respondent contends Petitioner did not file any such petition under the rule and, therefore, failed to properly present his claim to the state courts (*id.* at 25).  Furthermore, he failed to establish cause and prejudice, or that a manifest injustice would result from this court's failure to review the claim; therefore, Petitioner is not entitled to federal habeas relief (*id.*).

Respondent additionally contends that as to Ground Two, that is, Petitioner's claimed violation of his speedy trial rights, Petitioner's claim is not cognizable in federal habeas because the issue is grounded on issues of state law only (Doc. 62 at 20).  Respondent argues that although Petitioner couched his claim in terms of federal constitutional law, it is based purely on state law issues, specifically, Rule 3.191 of the Florida Rules of Criminal Procedure (*id.* at 21–22).  Furthermore, Petitioner did not argue, either in the state courts or in this federal habeas action, that the four-factor test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), weighed in favor of his claim; thus, he failed to present a federal basis for his speedy trial claim (*id.* at 21–23).  Moreover, Petitioner failed to show cause for his failure to present a federal claim, or prejudice from this court's failure to consider his claim.  Therefore, federal habeas relief should be denied (*id.* at 23).

The state court record shows that Petitioner raised Grounds One through Four in his state habeas petition (Doc. 30, Ex. J at 14–31).  The state habeas court denied the petition on the ground that habeas corpus was not the appropriate vehicle for bringing his claims; rather, Petitioner should have addressed his claims on direct appeal or in postconviction motions (Doc. 30, Ex. K).  The court advised Petitioner that motions for postconviction relief under Rule 3.800 and Rule 3.850 of the

Florida Rules of Criminal Procedure completely superseded habeas corpus as a means of collaterally attacking a judgment and sentence, and such motions must be filed with the sentencing court (*id.*).

The state court clearly and expressly stated that its judgment rested on a procedural bar, that is, that habeas corpus could not be used as a method of second appeal of issues which should have been raised on direct appeal or through a Rule 3.800 or Rule 3.850 motion filed with the trial court (*see* Doc. 30, Ex. K). Florida courts consistently apply the procedural rule that issues that could or should have been raised on direct appeal are procedurally barred from collateral review. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). In Florida, a defendant may challenge on direct appeal the deprivation of his rights to a first appearance, probable cause determination, and speedy trial. *See, e.g.*, Chavez v. State, 832 So. 2d 730 (Fla. 2002); Wilson v. State, 913 So. 2d 1172, 1173 (Fla. 5th DCA 2005) (petitioner could not challenge probable cause order by means of petition for writ of certiorari because alleged injury could be corrected on direct appeal of conviction); Winter v. State, 865 So. 2d 555 (Fla. 1st DCA 2003) (reversing conviction for violation of speedy trial rule). Because Petitioner's claims could have been raised on direct appeal, and in light of the firmly established and regularly followed rule in Florida that issues that could have been raised on direct appeal are procedurally barred from collateral review, the undersigned concludes that the state court's procedural default ruling rested on an independent and adequate state ground and, therefore, should be honored.

The court must next address whether Petitioner has demonstrated cause and prejudice to overcome the procedural bar, or that a fundamental miscarriage of justice will result from this court's failure to review the merits of his federal claims. In Petitioner's federal petition, supporting memorandum, and reply, he appears to assert three grounds as a basis for this court's reviewing his claims despite the procedural bar (Doc. 14 at 4–13; Doc. 25; Doc. 65). First, as previously noted, in Ground Five of his petition, he asserts a claim of ineffective assistance of appellate counsel based upon counsel's failure to raise Grounds One through Three on direct appeal of his conviction (Doc. 14 at 12–13). Petitioner states the issues were preserved in the trial court, but appellate counsel "failed to investigate and perfect [the] appellate record," and filed a "weak and frivolous brief containing one ground" for appeal (*id.* at 12). Second, Petitioner contends he was unable to raise

his claims on direct appeal of his conviction because the trial court and the State "falsified" the appellate record "in an attempt to cover up their errors" (Doc. 65 at 2–3; *see also* Doc. 14 at 6–11). Third, he contends his claims are jurisdictional in nature and, therefore, are not subject to a procedural bar because the trial court's failure to hold a first appearance or arraignment, failure to make a probable cause determination, and failure to meet the speedy trial deadline deprived the court of subject matter jurisdiction to try and sentence him (*id.* at 3–4).

To the extent Petitioner asserts Ground Five as not only a freestanding claim of ineffective assistance of appellate counsel, but also an assertion of cause for his failure to raise Grounds One through Four on direct appeal, he has failed to make a sufficient showing of cause to overcome the procedural bar. The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate

counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

The state court record shows that Petitioner's counsel filed a merits brief claiming that the trial court abused its discretion in permitting a partial rereading of a witness's testimony (*see* Doc. 30, Ex. F). Petitioner contends this issue was weak, and counsel instead should have raised the issues asserted in Grounds One through Four. In support of his claim of ineffective assistance of appellate counsel, Petitioner submitted correspondence from his appellate counsel, Mr. Steven Seliger, dated June of 2003 (Doc. 25 at 20–22). In Attorney Seliger's letter dated June 20, 2003, he acknowledged Petitioner's complaint that he (Petitioner) did not have a first appearance and that someone falsified a record to show that he did (*id.* at 20). Attorney Seliger advised Petitioner that this issue would be properly raised by filing a motion in the trial court whereupon the court could hold an evidentiary hearing, but that was outside the scope of his role as appellate counsel (*id.*). Attorney Seliger further acknowledged that Petitioner was entitled to a first appearance, pursuant to Rule 3.130(a) of the Florida Rules of Criminal Procedure, but he noted that the court appointed trial counsel for Petitioner, and counsel had plenty of opportunity to challenge the first appearance issue but chose not to (*id.*). Attorney Seliger opined that Petitioner's trial counsel likely did not raise the issue because "there is no legal consequence to not having a first appearance if you have a lawyer who can file a motion [for] pretrial release" (*id.*). Attorney Seliger concluded, "Again, I see no legal issue on appeal given the state of the appellate record in your case dealing with whether you had a first appearance. If not having a first appearance made everything that later happened in your case illegal, then I think I would find an appellate case saying so." (*id.*). In a subsequent letter from Attorney Seliger to Petitioner, dated June 27, 2003, Attorney Seliger stated, "Thank you for your letter. You can write me everyday (which it seems you do) but it will not change my opinion about your case." (*id.*).

Petitioner has failed to demonstrate that appellate counsel's failure to raise Grounds One through Four was unreasonable. Petitioner's speedy trial claim, asserted in Ground Two, is reasonably considered to be without merit. The state court record shows, and Petitioner does not dispute, that a demand for speedy trial was filed on July 25, 2002 (*see* Doc. 30, Ex. L, attached Docket Statement, entry dated 07-25-2002).[8] Rule 3.191(b) of the Florida Rules of Criminal Procedure governs the proceedings when the defendant files a demand for speedy trial. *See* Fla. R. Crim. P. 3.191(a) (subdivision (a) of Rule 3.191 ceases to apply whenever a person files a valid demand for speedy trail under subdivision (b)). Subdivision (b) of Rule 3.191 provides, in relevant part:

> . . . every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled "Demand for Speedy Trial," and serving a copy on the prosecuting authority.
>
> (1) No later than 5 days from the filing of a demand for speedy trial, the court shall hold a calendar call, with notice to all parties, for the express purposes of announcing in open court receipt of the demand and of setting the case for trial.
>
> (2) At the calendar call the court shall set the case for trial to commence at a date no less than 5 days nor more than 45 days from the date of the calendar call.
>
> (3) The failure of the court to hold a calendar call on a demand that has been properly filed and served shall not interrupt the running of any time periods under this subdivision.
>
> (4) If the defendant has not been brought to trial within 50 days of the filing of the demand, the defendant shall have the right to the appropriate remedy as set forth in subdivision (p).

Fla. R. Crim. P. 3.191(b).

The record in the instant case shows that the trial court held a hearing on Petitioner's demand for speedy trial on July 29, 2002, within the five-day time period provided in Rule 3.191(b) (*see* Doc. 30, Ex. L, attached Docket Statement, entry dated 07-29-2002). At that hearing, Petitioner's trial was set for August 26, 2002 (*id.*). Petitioner's trial commenced within forty-five (45) days from

---

[8] Petitioner acknowledged in his state habeas petition that he filed a demand for speedy trial on July 25, 2002 (Doc. 30, Ex. J at 12).

the date of that hearing (*see* Doc. 30, Ex. B).  In light of this analysis, Petitioner has failed to demonstrate that appellate counsel had a meritorious basis for raising a speedy trial issue based upon a violation of Rule 3.191.

Furthermore, Petitioner has failed to show counsel had a meritorious basis for arguing a violation of Petitioner's Sixth Amendment right to a speedy trial.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  The speedy-trial right is "amorphous," "slippery," and "necessarily relative."  Barker v. Wingo, 407 U.S. 514, 522, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) (internal quotation marks omitted).  It is "consistent with delays and depend[ent] upon circumstances."  *Id.*, 407 U.S. at 522 (internal quotation marks omitted).  In Barker, the Court refused to "quantif[y]" the right "into a specified number of days or months" or to hinge the right on a defendant's explicit request for a speedy trial.  *Id.* at 522–25.  Rejecting such "inflexible approaches," Barker established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed."  *Id.* at 529, 530. "[S]ome of the factors" that courts should weigh include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.*

Barker instructs that "different weights should be assigned to different reasons," *id.* at 531, and in applying Barker, the Supreme Court has asked "whether the government or the criminal defendant is more to blame for th[e] delay."  Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).  Deliberate delay "to hamper the defense" weighs heavily against the prosecution.  Barker, 407 U.S. at 531.  "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

In contrast, delay caused by the defense weighs against the defendant:  "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine."  *Id.* at 529.  *Cf.* United States v. Loud Hawk, 474 U.S. 302, 316, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986) (noting that a defendant whose trial was delayed by his interlocutory appeal "normally should not be able . . . to reap the reward of dismissal for failure to receive a speedy trial").  That rule accords with the reality that defendants may have incentives to employ delay as a "defense tactic":

delay may "work to the accused's advantage" because "witnesses may become unavailable or their memories may fade" over time.  Barker, 407 U.S. at 521.

Because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," delay caused by the defendant's counsel is also charged against the defendant. Vermont v. Brillon, — U.S. —, 129 S. Ct. 1283, 1290–91, 173 L. Ed. 2d 231 (2009) (internal quotation marks omitted).  The same principle applies whether counsel is privately retained or publicly assigned, for "[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program."  Id., 129 S. Ct. at 1291 (internal quotation marks omitted).  "Except for the source of payment," the relationship between a defendant and the public defender representing him is "identical to that existing between any other lawyer and client."  Polk County v. Dodson, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981).  Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor.  Brillon, 129 S. Ct. at 1291.

In the instant case, Petitioner states that none of the continuances sought in his case could be constitutionally attributed to him.  The procedural history of the pretrial proceedings in Petitioner's case is described by Petitioner in his state habeas petition and reflected in the Docket Statements submitted by Petitioner in the state habeas proceeding (*see* Doc. 30, Ex. J at 9–12, Ex. L, attached Docket Statements).[9]  Petitioner was appointed counsel on May 31, 2001, and Assistant Public Defender Joel Remland entered a notice of appearance on June 4, 2001 (*see* Doc. 30, Ex. J at 9, Ex. L, attached Docket Statement, entries dated 05-31-2001, 06-04-2001).  A written plea of not guilty was filed on July 2, 2001, and a case management conference was set for August 20, 2001 (*id.*, Ex. L, attached Docket Statement, entry dated 07-02-2001).  At the case management conference on August 20, 2001, trial was set for April 22, 2002 (*id.*, Ex. L, attached Docket Statement, entry dated 08-20-2001).  On October 20, 2001, Petitioner filed a motion to discharge counsel (Doc. 30, Ex. J at 10, Ex. L, attached Docket Statement, entry dated 10-22-2001).  On November 20, 2001, the court granted the motion and appointed Charles Hobbs as "conflict" counsel

---

[9] With the exception of the docket notation regarding a first appearance on May 31, 2001, Petitioner does not appear to take issue with the recitation of the procedural history of his case as reflected in the Docket Statements.

to represent Petitioner (*id.*, Ex. J at 10, Ex. L, attached Docket Statement, entry dated 11-20-2001). On January 14, 2002, Petitioner's counsel filed a motion for pretrial release (*see* Doc. 30, Ex. J at 10, Ex. L, attached Docket Statement, entry dated 01-14-2002). The initial hearing on the motion (that is, the <u>Arthur</u> hearing) was held on February 4, 2002, but it was not completed; therefore, the court continued the hearing to April 15, 2002 (*see* Doc. 30, Ex. J at 10, Ex. L, attached Docket Statement, entries dated 02-04-2002, 04-15-2002). On April 15, 2002, the court granted the defense's request for a continuance and continued the trial to June 10, 2002 (*id.*, Ex. L, attached Docket Statement, entry dated 04-15-2002). At a case management conference on June 5, 2002, the court granted another request for continuance by the defense (*id.*, Ex. L, attached Docket Statement, entry dated 06-05-2002). On June 13, 2002, Petitioner filed a motion to dismiss and on June 19, 2002, he filed a motion to discharge counsel (*id.*, Ex. J at 11, Ex. L, attached Docket Statement, entries dated 06-13-2002, 06-19-2002). At a case management conference on June 21, 2002, the court granted Petitioner's motion to discharge his counsel and set a case management conference for July 15, 2002 (*id.*, Ex. J at 11, Ex. L, attached Docket Statement, entry dated 06-21-2002). On July 15, 2002, the court denied Petitioner's motion to dismiss and set the trial for February 24, 2003 (Petitioner states this date was selected for the convenience of the court and State) (*id.*, Ex. J at 12, Ex. L, attached Docket Statement, entry dated 07-15-2002). As previously noted, on July 25, 2002, Petitioner filed a demand for speedy trial (*id.*, Ex. J at 12, Ex. L, attached Docket Statement, entry dated 07-25-2002). A hearing was held on July 29, 2002, and trial was set for August 26, 2002 (*id.*, Ex. J. at 12, Ex. L, attached Docket Statement, entry dated 07-29-2002). Also at that hearing, Petitioner filed a motion to appoint "standby" counsel, which the court subsequently granted (*id.*, Ex. J at 12, Ex. L, attached Docket Statement, entries dated 07-29-2002, 07-30-2002, 08-06-2002, 08-07-2002)). Petitioner's trial was held August 27, 2002 (*id.*, Ex. B, Ex. J at 12).

Petitioner has failed to demonstrate that appellate counsel had a reasonably meritorious basis for arguing that the four <u>Barker</u> factors weighed in favor of a speedy trial violation. There is no indication in the record that defense counsel did not consent to the setting of the original trial date of April 22, 2002. That trial date was continued, at the request of defense counsel, on April 15, 2002, and June 5, 2002. Although Petitioner does not believe these continuances should be attributed to him, Supreme Court precedent indicates that they are attributable to the defense. *See*

Brillon, 129 S. Ct. at 1290–91. On July 15, 2002, the court set the trial for February 24, 2003, which Petitioner obviously opposed as evidenced by his filing a speedy trial demand on July 25, 2002. Four days later, at the hearing on Petitioner's speedy trial demand, trial was set for August 26, 2002, and the State presented its first witness on August 27, 2002. As previously noted, Petitioner twice sought removal of his appointed counsel during the pendency of his case, and after his second attorney was discharged, Petitioner sought appointment of "standby" counsel. In light of this record, Petitioner has failed to show that the delay in his trial was attributable to the government. Additionally, the length of the delay in bringing Petitioner to trial (fifteen (15) months, from May 30, 2001 to August 27, 2002) was not extreme. Moreover, Petitioner has not shown he was actually prejudiced by this delay. Applying the four Barker factors to the record in this case, Petitioner has failed to show that appellate counsel's failure to raise a speedy trial issue based upon Sixth Amendment grounds was unreasonable, or that there was a reasonable probability of success on appeal if counsel had raised this issue.

Likewise, appellate counsel's failure to raise the issue of the trial court's failure to hold a first appearance or arraignment and failure to make a probable cause determination was not unreasonable. It is well established that the Fourth Amendment governs the procedures applied during some period following an arrest. *See, e.g.*, Powell v. Nevada, 511 U.S. 79, 80, 114 S. Ct. 1280, 128 L. Ed. 2d 1 (1994); County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991); Gerstein v. Pugh, 420 U.S. 103, 125, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). In the context of pretrial detention, the Supreme Court held that, when there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention. In Gerstein, the Court stated that a person arrested without a warrant must be brought before a neutral magistrate promptly. 420 U.S. at 113–14. "Significantly, the [Gerstein] Court stopped short of holding that jurisdictions were constitutionally compelled to provide a probable cause hearing immediately upon taking a suspect into custody and completing booking procedures." McLaughlin, 500 U.S. at 53. Rather, Gerstein held "that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." Albright v. Oliver, 510 U.S. 266, 274, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). The Gerstein Court "left it to the individual States to integrate

prompt probable cause determinations into their differing systems of pretrial procedures." McLaughlin, 500 U.S. at 53 (citing Gerstein, 420 U.S. at 123–24).

     In McLaughlin, the Supreme Court explored what Gerstein meant by "promptly." 500 U.S. 44. Attempting to "articulate more clearly the boundaries of what is permissible under the Fourth Amendment" in light of the competing interests at stake, the McLaughlin Court stated that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." Id. at 56. Thus, "'prompt' generally means within 48 hours of the warrantless arrest." Powell v. Nevada, 511 U.S. at 80.

     While the probable cause hearing may be combined with the first appearance, the purpose of a first appearance is different. It serves as a venue for informing the defendant of certain rights, and provides for a determination of the conditions for the defendant's release. See Globe v. State, 877 So. 2d 663 (Fla. 2004). At first appearance in Florida, a judicial officer informs the defendant of the charge (providing the defendant with a copy of the arrest/probable cause affidavit), and further informs the defendant that (1) the defendant is not required to say anything, and that anything the defendant says may be used against him; (2) if unrepresented, that the defendant has a right to counsel, and, if financially unable to afford counsel, that counsel will be appointed; and (3) the defendant has a right to communicate with counsel, family, or friends, and if necessary, will be provided reasonable means to do so. See Fla. R. Crim. P. 3.130.

     In the instant case, according to the trial court's docket statements submitted by Petitioner in the state habeas proceeding, on May 30, 2001, Petitioner was arrested, and a judge was assigned (see Doc. 30, Ex. L, attached Docket Statement, entry dated 05-30-2001). The docket statements further indicate that a first appearance was held on May 31, 2001, at which time the public defender was appointed to represent Petitioner, no bond was set, an arrest affidavit was filed, and another judge was assigned (id., Docket Statement, entry dated 05-31-2001, Arrest/Notice to Appear/Probable Cause Affidavit). This record thus indicates that a first appearance was indeed held within forty-eight (48) hours of Petitioner's arrest. Petitioner apparently was not present at the first appearance, as he acknowledges in his state habeas petition that he was taken to the jail's infirmary between 7:00–8:00 a.m. on the morning of May 31, 2001, to obtain medical care for an

injury he suffered to his head during his arrest (*see* Doc. 30, Ex. J at 8– 9). Petitioner's counsel filed a motion for pretrial release on January 14, 2002, asserting that Petitioner was never brought to a first appearance, and bond was not set in his case (Doc. 30, Ex. J, attached Motion for Pretrial Release). Counsel also averred that the facts were insufficient to hold Petitioner without bond, and requested that the court grant reasonable bond (*id.*). The record shows, and Petitioner acknowledges, that a hearing on the motion for pretrial release was held February 4, 2002 (Doc. 30, Ex. L, attached Docket Statement, entry dated 02-04-2002). The record thus indicates that a first appearance was promptly held, but Petitioner was not present. The record further shows that a probable cause hearing was held (the hearing on Petitioner's motion for pretrial release), but it was held February 4, 2002, well beyond the 48-hour time required by McLaughlin.

Assuming arguendo that Petitioner's rights to be present at the first appearance and to a probable cause determination within forty-eight (48) hours of his arrest were violated, he has failed to establish a reasonable probability that he would have succeeded on direct appeal of his conviction if counsel had raised these issues. In Gerstein, the Supreme Court expressly stated that it was not "retreat[ing] from the established rule that illegal arrest or detention does not void a subsequent conviction." 420 U.S. at 119 (citations omitted). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Id.* (citations omitted); *see also* Stroble v. California, 343 U.S. 181, 197, 72 S. Ct. 599, 96 L. Ed. 872 (1952) (stating "[w]hen this Court is asked to reverse a state court conviction as wanting in due process, illegal acts of state officials prior to trial are relevant only as they bear on petitioner's contention that he has been deprived of a fair trial, either through the use of a coerced confession or otherwise"); Cain v. Boone, 221 F.3d 1351 (10th Cir. 2000) (denying certificate of appealability on claim that the district court erred in § 2254 action in denying Fourth Amendment claim pursuant to Gerstein because "a conviction will not be vacated solely because the defendant was detained prior to trial without a determination of probable cause"); Montoya v. Scott, 65 F.3d 405, 421 (5th Cir. 1995) (even if habeas petitioner's claim that he was illegally detained without a prompt determination of probable cause, in violation of Gerstein, was supported by the record, it would not entitle him to habeas relief); United States v. Daniels, 64 F.3d 311, 314–15 (7th Cir. 1995)

(affirming conviction on ground that failure to conduct proper <u>Gerstein</u> hearing, or even refusal to conduct one, does not invalidate an otherwise valid conviction); <u>United States v. Basso</u>, 632 F.2d 1007, 1011 (2d Cir. 1980) (defendant's proper remedy for detention pending trial without determination of probable cause was to demand hearing to which he was entitled, not to have proceedings against him dismissed).  The Florida courts follow <u>Gerstein</u> in holding that a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.  *See* <u>Gil v. State</u>, 311 So. 2d 154, 154–55 (Fla. 3d DCA 1975).  In the instant case, Petitioner alleges no impact on the trial itself of the alleged pretrial violations; therefore, he has failed to establish a reasonable probability that he would have succeeded on direct appeal of his conviction if counsel had raised the issues concerning the trial court's failure to hold a first appearance or arraignment, and failure to make a probable cause determination within forty-eight (48) hours of his arrest.

Furthermore, Petitioner's argument that the trial court's deprivation of his right to a first appearance and arraignment, his right to a speedy trial, and his right to a probable cause determination deprived the trial court of subject matter jurisdiction is reasonably considered to be without merit.  "A jurisdictional defect is one that 'strip[s] the court of its power to act and ma[kes] its judgment void.'"  <u>McCoy v. United States</u>, 266 F.3d 1245, 1248–50 (11th Cir. 2001) (quoting <u>Escareno v. Carl Nolte Sohne GmbH & Co.</u>, 77 F.3d 407, 412 (11th Cir. 1996)).  Because the right to a first appearance, arraignment, speedy trial, and probable cause determination are personal rights of the defendant that may be waived, Petitioner has failed to demonstrate that the alleged deprivation of those rights deprived the state court of jurisdiction to try, convict, and sentence him.

Petitioner has failed to establish cause to overcome the procedural bar to federal review of Grounds One through Four.  Furthermore, he does not allege the existence of new reliable evidence of his innocence of the crime such that the failure to consider the claim would result in a fundamental miscarriage of justice.  Therefore, Grounds One through Four are barred from federal habeas review.

With regard to Ground Five, Petitioner's freestanding claim of ineffective assistance of appellate counsel, Petitioner has failed to satisfy the <u>Strickland</u> standard, as discussed *supra*. Therefore, he is not entitled to federal habeas relief on this claim.

## V. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the second amended petition for writ of habeas corpus (Doc. 14) be **DENIED**.

2.      That Petitioner's motion for writ of mandamus (Doc. 84) be **DENIED**.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of January 2010.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No. 4:07cv14/RH/EMT